IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA

              Plaintiff,

    v.

CITY OF HASTINGS, a municipal corporation

              Defendant.

Civil Action No.: 8:10-cv-247

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 5 |
| III. | PARTIES BOUND | 5 |
| IV. | DEFINITIONS | 6 |
| V. | GENERAL PROVISIONS | 12 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANT | 15 |
| VII. | REMEDY REVIEW | 17 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 18 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 20 |
| X. | REPORTING REQUIREMENTS | 23 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 25 |
| XII. | PROJECT COORDINATORS | 27 |
| XIII. | PERFORMANCE GUARANTEE | 28 |
| XIV. | CERTIFICATION | 34 |
| XV. | EMERGENCY RESPONSE | 34 |
| XVI. | STIPULATED JUDGMENT AND PAYMENTS FOR RESPONSE COSTS | 36 |
| XVII. | STIPULATED PENALTIES | 41 |
| XVIII. | INDEMNIFICATION AND INSURANCE | 45 |
| XIX. | FORCE MAJEURE | 47 |
| XX. | DISPUTE RESOLUTION | 49 |
| XXI. | COVENANTS NOT TO SUE BY PLAINTIFF | 53 |
| XXII. | RESERVATION OF RIGHTS BY UNITED STATES | 54 |
| XXIII. | COVENANT NOT TO SUE BY SETTLING DEFENDANT | 56 |
| XXIV. | EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION | 57 |
| XXV. | ACCESS TO INFORMATION | 59 |
| XXVI. | RETENTION OF RECORDS | 60 |
| XXVII. | NOTICES AND SUBMISSIONS | 61 |
| XXVIII. | EFFECTIVE DATE | 63 |
| XXIX. | RETENTION OF JURISDICTION | 63 |
| XXX. | INTEGRATION/APPENDICES | 63 |
| XXXI. | MODIFICATION | 64 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 65 |
| XXXIII. | SIGNATORIES/SERVICE | 65 |
| XXXIV. | CERTIFICATION OF COMPLETION | 66 |
| XXXV. | FINAL JUDGMENT | 68 |

I.  BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter

pursuant to Sections 106 and 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs

incurred by EPA and the Department of Justice ("DOJ") for response actions in connection with

the Second Street Subsite ("Subsite") of the Hastings Ground Water Contamination Superfund

Site ("Site") in Hastings, Adams County, Nebraska, together with accrued interest; and (2)

performance of response work by the defendant to support EPA in its implementation of the

Remedial Design for Operable Unit 20 of the Subsite and Remedial Actions for Operable Units

12 and 20 of the Subsite, consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as

amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.

§ 9621(f)(1)(F), EPA notified the State of Nebraska (the "State") on May 22, 2009, of

negotiations with a potentially responsible party ("PRP") regarding the implementation of Work

to support the Remedial Design and Remedial Actions for the Subsite, and EPA has provided the

State with an opportunity to participate in such negotiations and be a party to this Consent

Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the United States Department of Interior on May 22, 2009, of negotiations with a PRP

regarding the release of hazardous substances that may have resulted in injury to the natural

resources under Federal trusteeship and encouraged the trustee to participate in the negotiation of this Consent Decree.

E.      The defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to the Plaintiff or any other person arising out of the transactions or occurrences alleged in the complaint, nor does the Settling Defendant acknowledge that the release or threatened release of hazardous substances at or from the Subsite constitute an imminent or substantial endangerment to the public health or welfare or the environment.

F.      The United States, by and through the EPA, notified the Settling Defendant of its potential liability under Sections 106 and 107 of CERCLA relating to the Subsite through a letter transmitted on September 23, 1985 (1985 Notice Letter).

G.      The 1985 Notice Letter was the first notice by the EPA to the Settling Defendant of a claim against the Settling Defendant arising from a release or threatened release of hazardous substances at or from the Subsite.

H.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054.

I.       In response to a release or a substantial threat of a release of hazardous substances at or from the Subsite, EPA conducted a Remedial Investigation ("RI") in 1987.  EPA subsequently identified two operable units in connection with the Subsite.  The downgradient ground water plume was identified as Operable Unit 20 (OU 20) and the source area was identified as Operable Unit 12 (OU 12).  EPA commenced a Feasibility Study ("FS") for OU 20 in 1999 and an FS for OU 12 in 2005 pursuant to 40 C.F.R. § 300.430.

J.      EPA completed an RI Report for the Subsite in 1995, an RI Addendum in 1997, and an RI Supplement in 2000.  EPA completed an FS Report for OU 20 in 2002 and an FS Report for OU 12 in 2006.

K.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the OU 20 FS and the proposed plan for the OU 20 Remedial Action on October 5, 2002 in *The Hastings Tribune*.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for Remedial Action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

L.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the OU 12 FS and the proposed plan for the OU 12 Remedial Action for OU 12 on July 21, 2006, in *The Hastings Tribune*.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for Remedial Action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

M.      The decision by EPA on the OU 20 Remedial Action is embodied in an Interim Record of Decision ("ROD"), executed on July 18, 2003, on which the State had given its concurrence.  The OU 20 ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

N.      The decision by EPA on the OU 12 Remedial Action is embodied in a Final ROD, executed on September 21, 2006, on which the State had given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was

published in accordance with Section 117(b) of CERCLA.  The OU 12 ROD was amended by EPA on September 12, 2008.

O.     The OU 12 Amended ROD, combined with the OU 20 Interim ROD, represent the final remedial actions selected by EPA for the Subsite.

P.     EPA has been performing the remedial activities at the Subsite.  Solely for the purposes of Section 113(j) of CERCLA, the Remedial Designs and Remedial Actions selected by the RODs and the Work to be performed by Settling Defendant to support EPA in its implementation of the Remedial Designs and Remedial Actions shall constitute response action taken or ordered by the President.

Q.     The State of Nebraska ("State") and EPA entered into Superfund State Contracts ("SSC") on September 28, 2004 and on December 23, 2008, consistent with Section 104(c)of CERCLA, 42 U.S.C. 9604(c).  The SSCs provide, among other things, that the State will perform the Operation and Maintenance of the Remedial Actions for OU 12 and OU 20.

R.     The United States has reviewed Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Subsite.  Based upon this Financial Information and Insurance Information, the United States has determined that (1) Settling Defendant has limited financial ability to pay for response costs incurred and to be incurred at the Subsite but may receive additional funds through litigation it commenced against its insurers and (2) Settling Defendant is able to provide materials, equipment, and services to support EPA in EPA's performance of the Remedial Designs and the Remedial Actions for OU 12 and OU 20 and such efforts in support of these response actions will be properly and promptly conducted by

Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

S.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated and entered into by the Parties in good faith without collusion or fraud, that the background and findings herein are necessary, relevant, and essential to this Consent Decree, that implementation of this Consent Decree will expedite the cleanup of the Subsite and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns.  Any change in ownership, government, or corporate or other legal status of Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendant shall provide a copy of this Consent Decree to each contractor hired by Settling Defendant to perform the Work (as defined below) required by this Consent Decree and to each person representing Settling Defendant with respect to the Subsite or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.  DEFINITIONS

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Access Agreement" shall mean the Access Agreement that Settling Defendant signed on November 10, 2008, attached hereto as Appendix A, granting access to EPA and its representatives, to the property it owns at the Subsite in order to perform response actions, and remaining in effect until EPA notifies Settling Defendant that response actions have been completed.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXX).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Section XXVIII.

"Environmental Covenant" shall mean the instrument filed in the Adams County, Nebraska Register of Deeds on December 12, 2008, attached hereto as Appendix B, which restricts use of the property owned by Settling Defendant at the Subsite and provides notice upon conveyance that such property is subject to use limitations.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Financial Information" shall mean those financial documents identified in Appendix C, attached hereto.

"Groundwater Treatment System" shall mean (i) groundwater extraction and treatment system, (ii) in-well aeration system, (iii) enhanced bioremediation, or (iv) in-situ chemical oxidation, which are the technologies selected to address groundwater contamination in the OU12 and OU 20 RODs.

"Hastings Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122 (b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Insurance Action" shall refer to the pending litigation that the Settling Defendant filed against certain of its insurance companies, entitled, <u>City of Hastings, Nebraska et al. v. AEGIS, et al.</u> CI08-835, District Court of Adams County, Nebraska.

"Insurance Expenses" shall mean all reasonable attorneys' fees and expenses incurred by Settling Defendant in connection with the Insurance Action.  Insurance Expenses shall not include attorneys' fees or expenses incurred in connection with the Settling Defendant's defense or settlement of the claims brought in this action by the United States

"Insurance Information" shall mean those insurance policies and documents identified in Appendix D, attached hereto, including a Complaint filed on December 12, 2008, in the Adams County, Nebraska Court by Settling Defendant against its insurers, and any amended complaints.

"Insurance Proceeds" shall include any money received by or on behalf of the Settling Defendant or to which Settling Defendant may be entitled to recover with respect to any response costs incurred or to be incurred at or for the Subsite that is recovered or recoverable from insurance policies, including, but not limited to, whether the policies are sold, bargained, settled, or cancelled.  Insurance Proceeds shall not include any response costs, money or other damages or relief that is recovered or recoverable by Settling Defendant with respect to other subsites or operable units of the Site.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest

shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Long-Term Response Action" or "LTRA" shall mean the long-term response action for groundwater treatment required by the OU 12 ROD and the OU 20 ROD. The LTRA commences after the Groundwater Treatment System is determined to be Operational and Functional and extends for a period not to exceed ten years, and shall terminate prior to the end of such ten year period if and when the objectives of the relevant ROD are met.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NDEQ" shall mean the Nebraska Department of Environmental Quality and any successor departments or agencies of the State.

"Operational and Functional" or "O&F" shall mean either one year after construction of the Groundwater Treatment System is complete, to which EPA may grant an extension, or the date when the Groundwater Treatment System is determined concurrently by EPA and NDEQ to be functioning properly and operating as designed.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the groundwater remedy of the OU 12 and OU 20 RODs following the LTRA period, consistent with Section XI of the Statement of Work and the Revised Operation and Maintenance Manual for the Second Street Subsite, June 2006, attached to the Statement of Work.

"OU 12 Record of Decision" or "OU 12 ROD" shall mean the EPA ROD pertaining to OU 12, signed on September 21, 2006, by the Superfund Division Director, EPA, Region VII, all

amendments to the OU 12 ROD, and all attachments thereto.  The OU 12 ROD is attached hereto as Appendix E.

"OU 20 Record of Decision" or "OU 20 ROD" shall mean the EPA Interim ROD pertaining to OU 20, signed on July 18, 2003, by the Superfund Division Director, EPA Region VII, all amendments to the OU 20 ROD, and all attachments thereto.  The OU 20 ROD is attached hereto as Appendix E.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

"Parties" shall mean the United States and the Settling Defendant.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Actions, set forth in Section IV of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Remedial Action" or "Remedial Actions" shall mean those activities, except for Operation and Maintenance, to be undertaken by EPA and supported by Settling Defendant in accordance with the OU 12 and OU 20 RODs, SOW, and any other plans approved by EPA.

"Remedial Design" or "Remedial Designs" shall mean those activities to be undertaken by EPA and supported by Settling Defendant to develop the final plans and specifications for the OU 12 and 20 Remedial Actions.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean the City of Hastings, a municipal corporation, located in Hastings, Adams County, Nebraska.

"Site" shall mean the Hastings Ground Water Contamination Superfund Site, located in and around Hastings, Adams County, Nebraska, and depicted generally on the map attached as Appendix F.

"State" shall mean the State of Nebraska.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Actions, and Operation and Maintenance, as set forth in Appendix G to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Subsite" shall mean the Second Street Subsite located on the eastern edge of the downtown Hastings, Nebraska business district, bounded by the Burlington Northern Santa Fe Railway right-of-way to the south, the former Union Pacific Railroad to the east, Second Street to the north, and Minnesota Avenue to the west, and including the real estate located at 109 W. Second Street, Hastings, Adams County, Nebraska, legally described in the Environmental Covenant which is attached hereto as Appendix B.  The Subsite is depicted generally on the map attached as Appendix F, including all areas within OU 12 and OU 20, as defined presently, or as amended in the future, by the OU 12 ROD and OU 20 ROD, respectively.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXVI (Retention of Records).  Work does not

include the obligation to perform Operation and Maintenance of the Remedial Action for OU 12 and OU 20.

## V.  GENERAL PROVISIONS

5.      Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare and the environment by the design and implementation of response actions at the Subsite, to reimburse response costs of Plaintiff, and to resolve the claims against Settling Defendant as provided in this Consent Decree.

6.      Commitments by Settling Defendant.  Settling Defendant shall finance and perform the Work to the extent required of Settling Defendant by this Consent Decree in accordance with the OU 12 and OU 20 RODs, the SOW, all work plans and other plans, standards, specifications, and schedules set forth herein or approved by EPA pursuant to this Consent Decree.  Settling Defendant shall also reimburse the United States for response costs as provided for in Paragraphs 50 and 51 of this Consent Decree, and continue the prosecution of its Insurance Action and pay the United States 80% of all Insurance Proceeds in accordance with Paragraph 52.

7.      Compliance With Applicable Law.  All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable Federal and state laws and regulations.  Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the OU 12 and OU 20 RODs and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.      Permits.

a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e) and

Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work

conducted entirely on-Subsite (i.e., within the areal extent of contamination or in very close

proximity to the contamination and necessary for implementation of the Work).  Where any

portion of the Work that is not on-Subsite requires a Federal or State permit or approval, Settling

Defendant shall submit timely and complete applications and take all other actions necessary to

obtain all such permits or approvals.

b.      Settling Defendant may seek relief under the provisions of Section XIX

(Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting

from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.      This Consent Decree is not, and shall not be construed to be, a permit

issued pursuant to any Federal or State statute or regulation.

9.      Notice to Successors-in-Title.

a.      With respect to any property owned or controlled by Settling Defendant

that is located at the Subsite, within 15 days after the entry of this Consent Decree, Settling

Defendant shall submit to EPA for review and approval a notice to be filed with the Adams

County Register of Deeds, Adams County, State of Nebraska, which shall provide notice to all

successors-in-title that the property is part of the Subsite, that EPA selected a remedy for the

Subsite, and that Settling Defendant has entered into a Consent Decree requiring Settling

Defendant to support EPA in implementation of the remedy.  Such notice(s) shall identify the

United States District Court in which the Consent Decree was filed, the name and civil action

number of this case, and the date the Consent Decree was entered by the Court.  Settling

Defendant shall record the notice(s) within 10 days of EPA's approval of the notice(s).  Settling Defendant shall provide EPA with a certified copy of the recorded notice(s) within 10 days of recording such notice(s).

       b.     At least 30 days prior to the conveyance of any interest in property located within the Subsite including, but not limited to, fee interests, leasehold interests, and mortgage interests, Settling Defendant shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Subsite (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls).  At least 30 days prior to such conveyance, the Settling Defendant shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

       c.     In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the  Settling Defendant.  In no event shall the conveyance release or otherwise affect the liability of the Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of EPA.  If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

United States v. City of Hastings (Second Street Subsite)                     

## VI. <u>PERFORMANCE OF THE WORK BY SETTLING DEFENDANT</u>

10.     <u>Identification of Settling Defendant's Key Personnel</u>.

a.     All aspects of the Work to be performed by Settling Defendant pursuant to this Consent Decree shall be under the direction and supervision of Settling Defendant's Key Personnel who shall be (i) the Project Coordinator; (ii) an Environmental Engineer; and (iii) an Environmental Technician.  Within 10 days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and the State in writing of the name, title, and qualifications of the Key Personnel, as well as notify EPA which of its Key Personnel is designated as the "operator" of the OU 20 treatment systems.  In the event there is a change by Settling Defendant in any of its Key Personnel, Settling Defendant shall notify EPA within 10 days after the date when the vacancy occurred and shall utilize its best efforts to fill the vacated position within eight weeks after the date the vacancy occurred and at the same time, notify EPA and NDEQ of the person selected to fill the vacancy.

11.     <u>Remedial Work</u>.  Settling Defendant shall support EPA's design and implementation of the remedies set forth in the OU 12 ROD and OU 20 ROD by performing the Work identified in the Statement of Work, in accordance with this Consent Decree, OU 12 ROD, OU 20 ROD, the Schedule in the SOW, and any plans and other schedules developed pursuant to this Consent Decree.

12.     <u>Modification of the Work</u>.

a.     If EPA determines that modification of the Work specified in the SOW and/or work plans developed pursuant to SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedies set forth in the OU 12 and OU 20 RODs, EPA may require that such modification be incorporated into the

SOW and/or work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedies selected in the OU 12 and OU 20 RODs.

b.      For the purposes of this Paragraph 12 only, "scope of the remedies selected in the OU 12 and OU 20 RODs" shall mean the activities referenced in Section I of the SOW.

c.      If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, Settling Defendant may seek dispute resolution pursuant to Section XX (Dispute Resolution), Paragraph 76 (Record Review).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.      Settling Defendant shall implement any work required by any modifications incorporated into the SOW and/or work plans developed pursuant to SOW in accordance with this Paragraph, provided that the cost of the Work in Paragraph 51 does not exceed $1,700,000.

e.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

13.      Settling Defendant acknowledges and agrees that nothing in this Consent Decree or SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work requirements set forth in the SOW and/or work plans will achieve the Performance Standards.

14.      <u>Off Subsite Shipment of Waste Material</u>.

a.      Settling Defendant shall, prior to any off-Subsite shipment by Settling Defendant of Waste Material from the Subsite to an out-of-state waste management facility,

provide written notification to the appropriate state environmental official in the receiving

facility's state and to the EPA Project Coordinator of such shipment of Waste Material.

However, this notification requirement shall not apply to any off-Subsite shipments when the

total volume of all such shipments will not exceed 10 cubic yards.  Settling Defendant shall

include in the written notification the following information, where available: (1) the name and

location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of

the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste

Material; and (4) the method of transportation.  Settling Defendant shall notify the state in which

the planned receiving facility is located of major changes in the shipment plan, such as a

decision to ship the Waste Material to another facility within the same state, or to a facility in

another state.  Nothing in this Paragraph 14 shall be construed to require Settling Defendant to

seek or receive EPA's authorization for shipment of Waste Material generated or shipped by

EPA, its contractors, agents or assigns, or third parties.

       b.      Before shipping any hazardous substances, pollutants, or contaminants

from the Subsite to an off-Subsite location, Settling Defendant shall obtain EPA's certification

that the proposed receiving facility is operating in compliance with the requirements of

CERCLA Section 121(d)(3), 42 U.S.C. § 9622(d)(3), and 40 C.F.R.§ 300.440, which

certification shall not be unreasonably withheld.  Settling Defendant shall only send hazardous

substances, pollutants, or contaminants from the Subsite to an off-Subsite facility that complies

with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII.  REMEDY REVIEW

     15.    Periodic Review.  Settling Defendant shall support EPA, subject to Paragraph 18

below, in conducting any studies and investigations as requested by EPA, in order to permit EPA

to conduct reviews of whether the Remedial Actions are protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

16.      EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Actions are not protective of human health and the environment, EPA may select further response actions for the Subsite in accordance with the requirements of CERCLA and the NCP.

17.      Opportunity To Comment.  Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18.      Settling Defendant's Obligation To Assist EPA in EPA's Performance of Further Response Actions.  If EPA selects further response actions for the Subsite, the Settling Defendant shall assist EPA in EPA's undertaking of such further response actions, provided that the cost of the Work in Paragraph 51 does not exceed $1,700,000.  Settling Defendant may invoke the procedures set forth in Section XX (Dispute Resolution) to dispute (1) EPA's determination that the Remedial Action is not protective of human health and the environment, or (2) EPA's selection of the further response actions.  Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 76 (Record Review).

VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

19.      Settling Defendant shall follow EPA's Revised QAPP/SAP and Revised O&M

Manual for the Second Street Subsite, January 2006 (O&M Manual) attached to the SOW and use quality assurance, quality control, and chain of custody procedures for all compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the O&M Manual and the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

20.      Settling Defendant shall collect soil and ground water samples in accordance with the SOW and the O&M Manual and use EPA designated and approved laboratories for analyses. Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives.  Settling Defendant shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.   In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deems necessary.  Upon request, EPA and the State shall allow Settling Defendant to take split or duplicate samples of any samples they take as part of EPA's implementation of the Work.

21.      Settling Defendant shall include in the Monthly Operations Report two copies to EPA and one copy to the State of the results of all sampling and/or tests or other data performed

by or on behalf of Settling Defendant with respect to the Subsite and/or the implementation of this Consent Decree unless EPA agrees otherwise.

22.     Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.  ACCESS AND INSTITUTIONAL CONTROLS

23.     Within 30 days of the Effective Date, Settling Defendant shall amend the Access Agreement, Appendix A, to include the granting of access to the Subsite to the State and its representatives, and provide an amended Access Agreement to EPA and the State.

24.     If any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, as determined by EPA, and such property is owned or controlled by persons other than Settling Defendant, upon request by EPA, Settling Defendant shall use best efforts to secure from such persons:

        a.      an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, implementation of the Remedial Actions by EPA and Work performed by Settling Defendant consistent with the SOW;

        b.      an agreement, enforceable by the Settling Defendant and the United States, to refrain from using the Subsite or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Such restrictions include, but are not

limited to, the restrictions set forth in the Environmental Covenant (Appendix B); and

    c. the execution and recordation in the Adams County Register of Deeds, State of Nebraska, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the activities described in SOW, and (ii) grants the right to enforce the land/water use restrictions set forth in the Environmental Covenant (Appendix B), or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendant and its representatives, and/or (iv) other appropriate grantees.  If EPA so requests, within 45 days of entry of this Consent Decree, or within 45 days of such request if made after the Effective Date. Settling Defendant shall submit to EPA for review and approval with respect to such property:

    (1) A draft easement, in substantially the form attached hereto as Appendix B, that is enforceable under the laws of the State of Nebraska, and

    (2) a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA) or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances.

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded

with the Register of Deeds of Adams County.  Within 30 days of the recording of the easement,

Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence

of title acceptable to EPA, and a certified copy of the original recorded easement showing the

clerk's recording stamps.  If easement is to be conveyed to the United States, the easement and

title evidence (including final title evidence) shall be prepared in accordance with the DOJ Title

Standards 2001, and approval of the sufficiency of title must be obtained as required by 40

U.S.C. § 255.

25.     For purposes of Paragraph 24 of this Consent Decree, "best efforts" includes the

payment of reasonable sums of money in consideration of access, access easements, land/water

use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien

or encumbrance.  If (a) any access or land/water use restriction agreements required by

Paragraph 24(a) and (b) of this Consent Decree are not obtained within 45 days of the date of

entry of this Consent Decree, or within 45 days of request by EPA if made after the Effective

Date, or (b) Settling Defendant is unable to obtain an agreement pursuant to Paragraph 24(c)(2)

from the holder of a prior lien or encumbrance to release or subordinate such lien or

encumbrance to the easement being created pursuant to this Consent Decree within 45 days of

the date of entry of this Consent Decree, Settling Defendant shall promptly notify the United

States in writing, and shall include in that notification a summary of the steps that Settling

Defendant has taken to attempt to comply with Paragraph 24 of this Consent Decree.  The United

States may, as it deems appropriate, assist Settling Defendant in obtaining access or land/water

use restrictions, either in the form of contractual agreements or in the form of easements running

with the land, or in obtaining the release or subordination of a prior lien or encumbrance.

Settling Defendant shall reimburse the United States in accordance with the procedures in

Section XVI (Stipulated Judgment and Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation, provided such reimbursement does not exceed Settling Defendant's obligation of Paragraph 51.

26.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed in addition to the restrictions set forth in the Environmental Covenant (Appendix B) to implement the remedy selected in the OU 12 ROD and the OU 20 ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's and the State's efforts to secure such governmental controls.

27.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X.  REPORTING REQUIREMENTS

28.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit two copies to EPA and one copy to the State of written Monthly Operations Reports that: (a) describe the actions which have been taken by or on behalf of Settling Defendant toward achieving compliance with this Consent Decree during the previous month; and (b) include a summary of all results of sampling and tests and all other data generated by Settling Defendant or its contractors in the previous month; and (c) describe all Work or deliverables completed and submitted during the previous month.  Settling Defendant shall submit these reports to EPA and

United States v. City of Hastings (Second Street Subsite)                                      Page 23 of  71

the State by the tenth day of every month following the lodging of this Consent Decree until

EPA notifies the Settling Defendant that such reports are not required.  If requested by EPA,

Settling Defendant shall also provide briefings for EPA to discuss the progress of the Work.

29.     Settling Defendant shall notify EPA of any change in the schedule described in

the Monthly Operations Report for the performance of any activity, including, but not limited to,

data collection and implementation of Work, no later than seven days prior to the performance of

the activity.

30.     Upon the occurrence of any event during performance of the Work that Settling

Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the

Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall,

within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the

Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project

Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project

Coordinator is available, the Emergency Response Section, Region VII, EPA.  These reporting

requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA

Section 304.

31.     Within 20 days of the onset of such an event, Settling Defendant shall furnish to

EPA a written report, signed by the Settling Defendant's Project Coordinator, setting forth the

events which occurred and the measures taken, and to be taken, in response thereto.  Within 30

days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all

actions taken in response thereto.

32.     Settling Defendant shall submit two copies of all plans, reports, and data required

by this Consent Decree, the SOW or any other approved plans to EPA in accordance with the

schedules set forth in such plans.  Settling Defendant shall simultaneously submit two copies of all such plans, reports and data to the State.  Upon request by EPA, Settling Defendant shall submit in electronic form all portions of any report or other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

33.     All reports and other documents submitted by Settling Defendant to EPA (other than the Monthly Operations Reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree, shall be signed by an authorized representative of Settling Defendant.

## XI.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

34.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) codify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within 20 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

35.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 34(a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their

right to invoke the Dispute Resolution procedures set forth in Section XX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 34(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XVII (Stipulated Penalties).

36.     Resubmission of Plans.

a.      Upon receipt of a notice of disapproval pursuant to Paragraph 34(d), Settling Defendant shall, within 10 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XVII, shall accrue during the 10-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 37 and 38.

b.      Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 34(d), Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XVII (Stipulated Penalties).

37.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report, or other item. Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XX (Dispute Resolution), provided that such implementation does not exceed Settling

Defendant's obligation in Paragraph 51.

38. If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XX (Dispute Resolution) and Section XVII (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XVII.

39. All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

40. EPA has designated its Project Coordinator as Darrell Sommerhauser, and William Gresham as its Alternative Project Coordinator, both of whom are located at 901 North 5th Street, Kansas City, Kansas 66101. Within 20 days of lodging of this Consent Decree, Settling Defendant and the State shall notify EPA, in writing, of the name, address and telephone number of its Project Coordinator and Alternate Project Coordinator. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless

impraticable, but in no event later than the actual day the change is made.  The Settling

Defendant's Project Coordinator  shall be subject to disapproval by EPA and shall have the

technical expertise sufficient to adequately oversee all aspects of the Work.  The Settling

Defendant's Project Coordinator  shall not be an attorney for any of the Settling Defendants in

this matter.  He or she may assign other representatives, including other contractors, to serve as a

Site representative for oversight of performance of daily operations during remedial activities.

41.     EPA may designate other representatives, including, but not limited to, EPA

employees, and Federal contractors and consultants, to observe and monitor the progress of any

activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate

Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager

("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R.

Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator  shall have

authority, consistent with the National Contingency Plan, to halt any Work required by this

Consent Decree and to take any necessary response action when s/he determines that conditions

at the Site constitute an emergency situation or may present an immediate threat to public health

or welfare or the environment due to release or threatened release of Waste Material.

XIII.  PERFORMANCE GUARANTEE

42.     In order to ensure the full and final completion of the Work, Settling Defendant

shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of

$1,500,000 in one or more of the following forms, which must be satisfactory in form and

substance to EPA:

        a.     A surety bond unconditionally guaranteeing payment and/or performance

of the Work that is issued by a surety company among those listed as acceptable sureties on

Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

        b.      One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii)  whose letter-of-credit operations are regulated and examined by a U.S. Federal or state agency;

        c.      A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) those trust operations are regulated and examined by a U.S. Federal or state agency;

        d.      A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a state agency;

        e.      Settling Defendant may use one or more of the forms of Performance Guarantee provided herein providing a portion of the Performance Guarantee, so long as the Performance Guarantee totals $1,500,000.

        43.      Settling Defendant has selected, and EPA has approved, as an initial Performance Guarantee, pursuant to Paragraph 42, an irrevocable letter of credit in the form attached as Appendix H.  Within ten days after the Effective Date, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the document attached hereto as Appendix H.  Within thirty (30) days of the Effective Date, Settling Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to EPA in accordance with Section

XXVII (Notices and Submissions) of this Consent Decree with a copy to the United States as specified in Section XXVII.

44.     In the event that EPA determines at any time that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 42 of this Consent Decree that satisfies all requirements set forth in this Section XIII.   In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46 of this Consent Decree.  Settling Defendant's inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms hereof.

45.     The commencement of any Work Takeover pursuant to Paragraph 83 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee provided pursuant to Paragraph 42 (a), (b), (c), (d) and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee, whether in cash or in

kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.

If for any reason EPA is unable to promptly secure the resources guaranteed under any such

Performance Guarantee, whether in cash or in kind, necessary to continue and complete the

Work assumed by EPA under the Work Takeover, Settling Defendant shall immediately upon

written demand from EPA deposit into an account specified by EPA, in immediately available

funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not

exceeding the estimated cost of the remaining Work to be performed as of such date, as

determined by EPA.

  46. Modification of Amount and/or Form of Performance Guarantee

   a. <u>Reduction of Amount of Performance Guarantee</u>.  If Settling Defendant

believes that the estimated cost to complete the remaining Work has diminished below the

amount set forth in Paragraph 42 above, Settling Defendant may, on any anniversary date of

entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in

writing to request a reduction in the amount of the Performance Guarantee provided pursuant to

this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the

remaining Work to be performed.  Settling Defendant shall submit a written proposal for such

reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be

performed and the basis upon which such cost was calculated.  In seeking approval for a revised

or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set

forth in Paragraph 46(b)(2) of this Consent Decree.  If EPA decides to accept such a proposal,

EPA shall notify the petitioning Settling Defendant of such decision in writing.  After receiving

EPA's written acceptance, Settling Defendant may reduce the amount of the Performance

Guarantee in accordance with and to the extent permitted by such written acceptance.  In the

event of a dispute, Settling Defendant may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraph 44 or 46(b) of this Consent Decree.

      b.     <u>Change of Form of Performance Guarantee</u>.

      (1)     If, after the Effective Date, Settling Defendant desires to change the form or terms of any Performance Guarantee provided pursuant to this Section, Settling Defendant may, on any anniversary of the Effective Date, at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder.  The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 46(b)(2) of this Consent Decree.  Any decision made by EPA on a petition submitted under this subparagraph (b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

      (2)     Settling Defendant shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by

reference in this Section.  Settling Defendant shall submit such proposed revised or

alternative form of Performance Guarantee to the EPA in accordance with Section

XXVII (Notices and Submissions) of this Consent Decree.  EPA will notify Settling

Defendant in writing of its decision to accept or reject a revised or alternative

Performance Guarantee submitted pursuant to this subparagraph.  Within ten days after

receiving a written decision approving the proposed revised or alternative Performance

Guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or

other documents required in order to make the selected Performance Guarantee legally

binding in a form substantially identical to the documents submitted to EPA as part of the

proposal, and such Performance Guarantee shall thereupon be fully effective.  Settling

Defendant shall submit all executed and/or otherwise finalized instruments or other

documents required in order to make the selected Performance Guarantee legally binding

to the EPA within thirty days of receiving a written decision approving the proposed

revised or alternative Performance Guarantee in accordance with Section XXVII (Notices

and Submissions) of this Consent Decree.

        c.      <u>Release of Performance Guarantee</u>.  If Settling Defendant receives written

notice from EPA that the Work has been fully and finally completed in accordance with this

Consent Decree and SOW, or if EPA otherwise so notifies Settling Defendant in writing, Settling

Defendant may thereafter release, cancel, or discontinue the Performance Guarantee provided

pursuant to this Section.  Settling Defendant shall not release, cancel, or discontinue any

Performance Guarantee provided pursuant to this Section except as provided in this

subparagraph.  In the event of a dispute, Settling Defendant may release, cancel, or discontinue

the Performance Guarantee required hereunder only in accordance with a final administrative or

judicial decision resolving such dispute pursuant to Section XX (Dispute Resolution).

## XIV.  CERTIFICATION

47.    Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has

a.  not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Subsite since notification of potential liability by the United States or the filing of a suit against it regarding the Subsite;

b.  fully complied with any and all EPA requests for documents or information regarding the Subsite and Settling Defendant's financial circumstances pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927;

c.  submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

d.  fully disclosed the existence of any and all insurance policies that may cover claims relating to the Subsite as set forth in Appendix D.  Nothing herein is intended to exclude any insurance policies relating to Subsite that may be discovered through investigating applicable policies after entry of this Consent Decree.

## XV.  EMERGENCY RESPONSE

48.  In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Subsite that constitutes an emergency

situation or may present an immediate threat to public health or welfare or the environment,

Settling Defendant shall, subject to Paragraph 49, immediately take all appropriate action to

prevent, abate, or minimize such release or threat of release, until such time as EPA arrives on-

site to take over such response, and shall notify the EPA's Project Coordinator, pursuant to

Paragraph 30, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.

If neither of these persons is available, Settling Defendant shall notify the EPA Emergency

Response Unit, Region VII.  Until such time as EPA's Project Coordinator arrives on-site to take

over such response, Settling Defendant shall take such actions in consultation with EPA's

Project Coordinator or other available authorized EPA officer and in accordance with all

applicable provisions of the Health and Safety Plans and any other applicable plans or

documents developed pursuant to the SOW.  In the event that Settling Defendant fails to take

appropriate response action as required by this Section, and EPA takes such action instead,

Settling Defendant shall reimburse EPA all costs of the response action not inconsistent with the

NCP pursuant to Section XVI (Stipulated Judgment and Payments for Response Costs), provided

that such reimbursement does not exceed Settling Defendant's obligation in Paragraph 51.

Settling Defendant retains all of its rights against any person who may have caused or

contributed to any release which results in the obligation of Settling Defendant to undertake

response action under this section, including the right to make demand and seek action to compel

such person to undertake work, or to reimburse Settling Defendant for the response cost

expenses incurred by Settling Defendant.

     49.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to

limit any authority of the United States (a) to take all appropriate action to protect human health

and the environment or to prevent, abate, respond to, or minimize an actual or threatened release

of Waste Material on, at, or from the Subsite, or (b) to direct or order such action, or seek an

order from the Court, to protect human health and the environment or to prevent, abate, respond

to, or minimize an actual or threatened release of Waste Material on, at, or from the Subsite,

subject to Section XXI (Covenants Not to Sue by Plaintiff).

### XVI.   STIPULATED JUDGMENT AND PAYMENTS FOR RESPONSE COSTS

50.    <u>Stipulation of Judgment</u>.  The Parties stipulate, and the Court hereby enters

judgment in the amount of EPA's unreimbursed response costs, which the Court finds are

damages (but are not damages for injury to, destruction of, or loss of natural resources under

CERCLA Section 107(a), 42 U.S.C. § 9607(a)) in the amount of $14,130,572 (as of 12/31/2009)

against Settling Defendant, jointly and severally, in favor of the United States.  In satisfaction of

said Judgment entered against Settling Defendant, Settling Defendant shall (a) pay

$1,000,000.00 (plus Interest) as set forth below in Paragraph 51 below, (b) pay and/or perform

Work totaling $1,700,000 in accordance with Paragraph 51, and (c) pay 80% of any Insurance

Proceeds, as set forth below in Paragraph 52(e).  This Judgment shall remain in effect until

Settling Defendant has complied with all requirements in this Consent Decree.

51.    Settling Defendant shall pay to the EPA Hazardous Substance Superfund the

principal sum of $1,000,000.00, plus an additional sum of Interest as explained below.  Payment

shall be made in five yearly installments of $200,000.00 each as explained below.  Each of these

five installments, except for the first, on which no Interest shall be due, shall include the

principal amount due plus an additional sum for accrued Interest on the declining principal

balance calculated from the Effective Date.  The first payment of $200,000.00 shall be due

within 30 days of the Effective Date.  The subsequent four payments of $200,000.00 (plus

accrued Interest) shall be due on January 10 of each year thereafter.  Settling Defendant shall

<u>United States v. City of Hastings (Second Street Subsite)</u>                                    Page 36 of  71

also make a final payment within 30 days of a written demand from EPA, consistent with Paragraph 108. The amount of the final payment shall be the sum of (a) the difference between (i) $2,700,000 and (ii) the sum of the cash payments made by Settling Defendant as described in this Paragraph ($1,000,000.00) and the cost of the Work performed by Settling Defendant and approved by EPA consistent with Paragraph 55, and (b) an additional sum for Interest which shall accrue thirty (30) days from the date of EPA's written demand as required by Paragraph 108 until the final payment has been received. Settling Defendant may accelerate these payments, and Interest due on the accelerated payments shall be reduced accordingly.

52.     Insurance Proceeds. Settling Defendant shall use its best efforts, including, but not limited to, its ongoing Insurance Action, to maximize its recovery of Insurance Proceeds from any and all insurance policies that may be or have been identified or discovered by Settling Defendant, relating to Defendant's liability to the United States at the Subsite. As part of Settling Defendant's efforts to recover Insurance Proceeds, and as of the Effective Date:

        a.     Settling Defendant agrees to fund and continue the prosecution of the Insurance Action, at its own expense, until resolution through settlement or judgment;

        b.     Settlement of or for the Insurance Proceeds with respect to the Subsite shall be subject to the approval of the United States, which shall not be unreasonably withheld. Any dispute regarding such approval shall be subject to resolution by this Court, but only after the Parties have tried to resolve the dispute informally for a period not to exceed thirty days from when one Party provides written notice to the other Party that there is a disagreement.

        c.     No later than ten (10) days after Settling Defendant's execution of this Consent Decree, to the extent Settling Defendant has not already done so, Settling Defendant shall provide notice of this Consent Decree and the United States' response cost claim under

CERCLA to any insurance company that has issued a policy relating to this Subsite.  In addition

to such notice, and to the extent that Settling Defendant has not already done so, Settling

Defendant shall submit, within ten (10) days after entry of this Consent Decree, a written claim

for each insurance policy to the appropriate insurance company to determine whether the

policies provide for payment of the United States' judgment under either environmental or

general liability provisions.  Settling Defendant shall pursue resolution of each claim as promptly

as possible.  Settling Defendant and the United States, on behalf of EPA, shall enter into a

Confidentiality Agreement that protects privileged and work product materials and information

in which the Parties hereto share a common interest.  Settling Defendant shall provide to EPA:

(1) such notices and written claims as described above in this Paragraph and any responses from

the insurers; (2) all written and electronic communications and documents between Settling

Defendant and the insurers regarding any claims made by or on behalf of Settling Defendant

under any insurance policy, settlement negotiations, or actual or potential settlements or

resolutions of the claims in the Insurance Action; (3) written and/or electronic summaries of oral

conversations that the Settling Defendant and/or its attorneys have with the insurers regarding

such settlement negotiations and settlements; and (4) all affidavits, reports, or declarations of any

experts and/or factual witnesses, court filings, and discovery responses in the Insurance Action.

        d.       No later than fifteen (15) days after Settling Defendant receives notice of

any Insurance Proceeds payable to Settling Defendant under any insurance policy, whether by

judgment, settlement or otherwise, Settling Defendant shall provide EPA with written notice of

such expected Insurance Proceeds, including copies of any correspondence or written

information received from any insurance company regarding any Insurance Proceeds that will be

paid to Settling Defendant, and any documentation of Insurance Expenses;

United States v. City of Hastings (Second Street Subsite)                    Page 38 of  71

e.      Within twenty (20) days of Settling Defendant's receipt of any Insurance
Proceeds, Settling Defendant shall pay 80% of all Insurance Proceeds to the United States as
specified in Paragraph 53, after deduction of all Insurance Expenses and shall provide the United
States with documentation of any Insurance Expenses in addition to those provided in Paragraph
52(d);

f.      The 20% share of Insurance Proceeds after Insurance Expenses retained
by Settling Defendant under Paragraph 52(e), above, if received by Settling Defendant prior to
payment of the entire $1,000,000.00 plus Interest due to the United States under Paragraphs 50,
51, and 56, shall be applied by the Settling Defendant to prepay, in whole or in part, the payment
due under Paragraphs 50 and 51, above, with the exception of the final payment, which shall be
due at the time provided in Paragraph 51.  Interest due on any such pre-payment shall be
calculated from the Effective Date to the date of pre-payment;

g.      Settling Defendant shall provide a privileged and confidential semi-annual
(or at such other time necessary for EPA's consideration of any settlement offer) report to EPA
in accordance with Section XXVII (Notices and Submissions) identifying therein the existence
of any Confidential Business Information and detailing the status of insurance claims Settling
Defendant is pursuing, actions taken by Settling Defendant to secure recovery, and all recoveries
obtained.  The first report will be due within 60 days after the Effective Date of this Consent
Decree, and subsequent reports will be provided to EPA every 180 days thereafter until all
pertinent insurance litigation has been completed.

h.      The Parties agree that any proceeds recovered or received by or on behalf
of the Settling Defendant as a result of, or in any way related to, the Insurance Action, shall be
divided, allocating a 62% share of such proceeds to the response costs incurred or to be incurred

at the Subsite, and the remaining balance of such proceeds (38%) to the response costs incurred

or to be incurred at the other subsites or operable units of the Site.  The Parties also agree that all

proceeds from a release and/or settlement of the Settling Defendant's claims against an insurer

relating to Settling Defendant's liability to the United States at the Subsite, including, but not

limited to, claims for indemnification or defense costs, shall be considered proceeds to which the

62% shall apply.

53.     Settling Defendant shall make payments by FedWire Electronic Funds Transfer

("EFT") in accordance with current EFT procedures to be provided to Settling Defendant by the

Financial Litigation Unit of the U.S. Attorney's Office in the District of Nebraska following

lodging of the Consent Decree, and shall be accompanied by a statement identifying the name

and address of the Settling Defendant, the Site name, the EPA Region and Site/Spill ID Number

07/S2, the DOJ Case Number 90-11-2-09810, and the Civil Action Number.  At the time of

payment, Settling Defendant shall send notice that payment has been made to EPA and DOJ in

accordance with Section XXVII (Notices and Submissions), by email to

acctsreceivable.cinwd@epa.gov, and to EPA Cincinnati Finance Office, 26 Martin Luther King

Drive, Cincinnati, Ohio 45268.  Such notice shall reference the EPA Region and Site/Spill ID

Number 07/S2, DOJ Case Number 90-11-2-09810, and the Civil Action Number.

54.     The total payments to be paid by Settling Defendant pursuant to Section XVI

shall be deposited by EPA in the Hastings Site Special Account within the EPA Hazardous

Substance Superfund to be retained and used to conduct or finance response actions at or in

connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance

Superfund.

55.     On January 30th of each year after the Effective Date, and until conclusion of the

OU 12 LTRA, or such time when Settling Defendant believes it has incurred a total of $1,700,000 in performing Work, Settling Defendant shall submit to EPA a statement of costs Settling Defendant incurred in performing the Work during the previous fiscal (9/30 FYE) year. The statement shall be certified by a Certified Public Accountant.  EPA will review the statement and approve or disapprove, upon a reasonable basis, the submittal.  EPA's determination shall be subject to the dispute resolution procedures of Section XX.

56.  <u>Failure to Make Payments</u>.  If Settling Defendant fails to make any payments required by Section XVI by the required due date, Settling Defendant shall pay, as a stipulated penalty, in addition to Interest, $500.00 per day that such payment is late.  If Settling Defendant fails to make any payments required by Section XVI by the required due date and fails to cure in full the lack of payment within thirty (30) days after the required due date, Settling Defendant shall be in violation of this Consent Decree and all remaining installment payments and all accrued Interest shall become due immediately upon such failures, and Interest shall continue to accrue on any unpaid amounts, with the exception of the final payment, until the total amount due has been received.  Interest on the final payment shall accrue thirty (30) days from the date of EPA's written demand as required by Paragraph 108 until the final payment has been received.

## XVII.  <u>STIPULATED PENALTIES</u>

57.  Settling Defendant shall be liable for stipulated penalties in the amounts set forth in subparagraphs 57(a)-(c) to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XIX (Force Majeure).  Stipulated penalties shall accrue per violation per day for any non-compliance.  "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree, SOW or any work

plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

      a.    **Stipulated Penalties - Operate and Maintain the Soil Vapor Extraction System and Source Control Groundwater Extraction and Treatment System.**

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750.00 | 1st through the 14th day |
| $1,000.00 | 15 through the 30th day |
| $2,000.00 | 31st day and beyond |

      b.    **Stipulated Penalties - Review of EPA Work Plans, Drawings and Specifications; and Submittal of Annual Report and Monthly Operations Reports.**

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $350.00 | 1st through the 14th day |
| $600.00 | 15th through the 30th day |
| $850.00 | 31st day and beyond. |

      c.    **Stipulated Penalties - Any Other Requirements in Consent Decree.**

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $200.00 | 1st through the 14th day |
| $300.00 | 15th through the 30th day |
| $500.00 | 31st day and beyond. |

    58.   Stipulated Penalty - Work Take Over.  In the event EPA takes over a portion or all of the Work pursuant to Paragraph 83, Settling Defendant shall pay as a Stipulated Penalty the

amount equal to all costs EPA incurs in performing the Work that EPA takes over.

59.     All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

60.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance.  EPA may send the Settling Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a violation.

61.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XX (Dispute Resolution).  All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to U.S. Environmental Protection Agency, Fines and Penalties, Cincinnati Finance Center, P.O. Box 979077, St. Louis, MO 63197-9000, and shall indicate that the payment is for stipulated penalties, and shall reference the name and address of Settling Defendant, Hastings Ground Water Contamination Site, Second Street Subsite, EPA Region VII and Site/Spill ID Number 07/S2, DOJ Case Number 90-11-2-09810, and the Civil Action Number.  Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVII (Notices and Submissions).

62.     The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

63.     Penalties shall continue to accrue as provided in Paragraph 59 during any dispute resolution period, but need not be paid until the following:

    a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

    b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

    c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that it prevails.

64.     If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest.  Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 61.

65.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available

by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon

which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA,

provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l)

of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case

of a willful violation of the Consent Decree.

## XVIII.   INDEMNIFICATION AND INSURANCE

66.     Settling Defendant's Indemnification of the United States.

a.     The United States does not assume any liability by entering into this

agreement or by virtue of any designation of Settling Defendant as EPA's authorized

representatives under Section 104(e) of CERCLA.  Settling Defendant shall indemnify, save and

hold harmless the United States and its officials, agents, employees, contractors, subcontractors,

or representatives for or from any and all claims or causes of action arising from, or on account

of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors,

employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its

control, in carrying out activities pursuant to this Consent Decree, including, but not limited to,

any claims arising from any designation of Settling Defendant as EPA's authorized

representatives under Section 104(e) of CERCLA.  Further, Settling Defendant agrees to pay the

United States all costs it incurs including, but not limited to, attorneys fees and other expenses of

litigation and settlement arising from, or on account of, claims made against the United States

based on negligent or other wrongful acts or omissions of Settling Defendant, its officers,

directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf

or under their control, in carrying out activities pursuant to this Consent Decree.  The United

States shall not be held out as a party to any contract entered into by or on behalf of Settling

United States v. City of Hastings (Second Street Subsite)                                          Page 45 of  71

Defendant in carrying out activities pursuant to this Consent Decree. Neither the Settling

Defendant nor any such contractor shall be considered an agent of the United States.

        b.     The United States shall give Settling Defendant notice of any claim for

which the United States plans to seek indemnification pursuant to Paragraph 66, and shall consult

with Settling Defendant prior to settling such claim.

      67.     Settling Defendant waives any and all claims or causes of action against the United

States for damages or reimbursement or for set-off of any payments made or to be made to the

United States, arising from or on account of any contract, agreement, or arrangement between

Settling Defendant and any person for performance of Work on or relating to the Subsite,

including, but not limited to, claims on account of construction delays. In addition, Settling

Defendant shall indemnify and hold harmless the United States with respect to any and all claims

for damages or reimbursement arising from or on account of any contract, agreement, or

arrangement between Settling Defendant and any person for performance of Work on or relating

to the Subsite, including, but not limited to, claims on account of construction delays.

      68.     Within 30 days of the Effective Date, Settling Defendant shall secure, and shall

maintain until EPA notifies Settling Defendant, commercial general liability insurance with limits

of five million dollars, for any one occurrence, and automobile liability insurance with limits of

five million dollars, combined single limit, naming the United States as an additional insured with

respect to all liability arising out of the activities performed by or on behalf of Settling Defendant

pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling

Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable

laws and regulations regarding the provision of worker's compensation insurance for all persons

performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior

to commencement of the Work under this Consent Decree, Settling Defendant shall provide to

EPA certificates of such insurance and a copy of each insurance policy.  Settling Defendant shall

resubmit such certificates and copies of policies each year on the anniversary of the Effective

Date.  If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or

subcontractor maintains insurance equivalent to that described above, or insurance covering the

same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling

Defendant need provide only that portion of the insurance described above that is not maintained

by the contractor or subcontractor.

## XIX.  FORCE MAJEURE

69.    *Force majeure*, for purposes of this Consent Decree, is defined as any event arising

from causes beyond the control of the Settling Defendant, of any entity controlled by settling

defendant, or of Settling Defendant's contractors, that delays or prevents the performance of any

obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the

obligation.  The requirement that the Settling Defendant exercise "best efforts to fulfill the

obligation" includes using best efforts to anticipate any potential *force majeure* and best efforts to

address the effects of any potential *force majeure* (1) as it is occurring and (2) following the

potential *force majeure*, such that the delay is minimized to the greatest extent possible.  *Force*

*majeure* does not include financial inability to complete the Work.

70.    If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a *force majeure*, Settling

Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's

Alternate Project Coordinator or, in the event both of EPA's designated representatives are

unavailable, the Director of the Superfund Division, EPA Region VII, within 48 hours or such

other period of time as EPA determines is reasonable under the circumstances, of when Settling Defendant first knew that the event might cause a delay. Within five days thereafter, Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a *force majeure* if Settling Defendant intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a *force majeure*. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of *force majeure* for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

71. If EPA agrees that the delay or anticipated delay is attributable to a *force majeure*, the time for performance of the obligations under this Consent Decree that are affected by the *force majeure* will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the *force majeure* shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a *force majeure*, EPA will notify the Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a *force majeure*, EPA will notify the Settling Defendant in writing of the length of

the extension, if any, for performance of the obligations affected by the *force majeure*.

72.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), Settling Defendant shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a *force majeure*, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraph 69 and 70, above.  If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XX.  DISPUTE RESOLUTION

73.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

74.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written notice of dispute.

75.    Statement of Position.

a.    In the event that the parties cannot resolve a dispute by Informal Negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within seven days after the conclusion of the Informal Negotiation Period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant.  The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 76 or Paragraph 77.

b.    Within 15 days after receipt of  Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 76 or 77.  Within 10 days after receipt of EPA's Statement of Position, Settling Defendant may submit a reply.

c.    If there is disagreement between EPA and the Settling Defendant as to whether dispute resolution should proceed under Paragraph 76 or 77, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraph 76 and 77.

76.    Record Review.  Formal dispute resolution for disputes pertaining to the selection

or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental Statements of Position by the parties to the dispute.

b.      The Director of the Superfund Division, EPA Region VII, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 76(a).  This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 76(c) and (d).

c.      Any administrative decision made by EPA pursuant to Paragraph 76(b). shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the court and served on all parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendant's motion.

d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 76(a).

77.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 75, the Director of the Superfund Division, EPA Region VII, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Defendant unless, within ten days of receipt of the decision, Settling Defendant files with the Court and serves on the Parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendant's motion.

b.      Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

78.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 63.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable

provision of this Consent Decree.  In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XVII (Stipulated Penalties).

## XXI.  COVENANTS NOT TO SUE BY PLAINTIFF

79.     Except as specifically provided in Section XXII (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to the Subsite.  With respect to present and future liability for response costs, this covenant shall take effect upon receipt by EPA of the full payments required by Section XVI (Stipulated Judgment and Payment of Response Costs), including any Interest and stipulated penalties for failure to make such payments as provided for in Paragraph 56 of this Consent Decree.  This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information, Insurance Information and Certification made by Settling Defendant in Section XIV (Certification).  If the Financial Information, Insurance Information, or Certification made by Settling Defendant in Section XIV (Certification) is subsequently determined by the United States to be false or, in any material respect inaccurate, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree, and this covenant not to sue and the contribution protection in Paragraph 79 shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate information.  This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

## XXII.  RESERVATION OF RIGHTS BY UNITED STATES

80.     The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by Plaintiff in Section XXI.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.      liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b.      criminal liability;

c.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d.      liability, based on Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Subsite, unless authorized by law or otherwise provided in this Consent Decree or SOW, after execution of this Consent Decree by Settling Defendant;

e.      liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Subsite;

f.      liability for violations of Federal or state law by Settling Defendant which occur during or after implementation of the Work; and

g.      liability for costs the United States will incur in connection with other Subsites or Operable Units of the Site.

81.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this

action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information, Insurance Information, or Certification made by Settling Defendant in Section XIV (Certification), is false or, in any material respect, inaccurate.

82.     Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States may have against any person, firm, corporation or other entity not a signatory to this Consent Decree.

83.     <u>Work Takeover</u>.

(a)     In the event EPA determines that Settling Defendant has (i) ceased implementation of any portion of the Work, or (ii) is seriously or repeatedly deficient or late in their performance of the Work, or (iii) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

(b)     If, after expiration of the 10-day notice period specified in Paragraph 83(a), Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover").  EPA shall notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 83(b).

(c)     Settling Defendant may invoke the procedures set forth in Section XX

(Dispute Resolution), Paragraph 76 to dispute EPA's implementation of a Work Takeover under Paragraph 83(b). However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 83(b) until the earlier of (i) the date that Settling Defendant's remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XX (Dispute Resolution), Paragraph 76, requiring EPA to terminate such Work Takeover.

(d)     After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XIII of this Consent Decree, in accordance with the provisions of Paragraph 45 of that Section.

84.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXIII.  COVENANT NOT TO SUE BY SETTLING DEFENDANT

85.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Subsite or this Consent Decree, including but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b      any claim arising out of response actions at or in connection with the Subsite, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. §

1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

    c.  any claim against the United States pursuant to Sections 107 or 113 of

CERCLA, 42 U.S.C. §§ 9607 or 9613, relating to the Subsite.

Except as provided in Paragraph 91 (Waiver of Claim-Splitting Defenses), these covenants not to

sue shall not apply in the event the United States brings a cause of action or issues an order

pursuant to the reservations set forth in Paragraph 80(c)-(g), but only to the extent that Settling

Defendant's claims arise from the same response action or response costs that the United States is

seeking pursuant to the applicable reservation.

  86.  Nothing in this Consent Decree shall be deemed to constitute approval or

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. .§ 9611, or

40 C.F.R.300.700(d).

## XXIV.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

  87.  Nothing in this Consent Decree shall be construed to create any rights in, or grant

any cause of action to, any person not a party to this Consent Decree.  Each of the Parties

expressly reserves any and all rights, including but not limited to pursuant to Section 113 of

CERCLA, 42 U.S.C.§ 9613, defenses, claims, demands, and causes of action which each Party

may have with respect to any matter, transaction or occurrence relating in any way to the Subsite

against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the

United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3)

to pursue any such persons to obtain additional response costs or response action and to enter into

settlements that give rise to contribution protection pursuant to Section 113(f)(2).

  88.  The Parties agree, and by entering this Consent Decree this Court finds, that this

settlement constitutes a judicially approved settlement for purpose of Section 113 (f)(2) of

CERCLA, 42 U.S.C. § 9613(f)(2) and that Settling Defendant is entitled, as of the Effective Date, to protection from actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for matters addressed in this Consent Decree. "Matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the Subsite by the United States or any other person. "Matters addressed" in this Consent Decree do not include those response costs or response actions as to which EPA has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

89.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Subsite, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

90.     Settling Defendant also agrees that with respect to any suit or claim brought against it for matters related to this Consent Decree, it shall notify the United States in writing within 10 days of service of the Complaint on Settling Defendant. In addition, Settling Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

91.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Subsite, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent

proceeding were or should have been brought in this Consent Decree; provided, however, that nothing in this its affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXV.  ACCESS TO INFORMATION

92.    Settling Defendant shall provide to EPA, upon request, copies of all records, reports, documents or information within its possession or control or that of its contractors or agents relating to cleanup activities at the Subsite or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, correspondence, or other documents or information related to the Subsite.  Settling Defendant shall also make available to EPA for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

93.    Confidential Business Information and Privileged Documents.

a.    Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to EPA under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b.    Settling Defendant may assert that certain documents, records and other

information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendant asserts such a privilege in lieu of providing documents, Settling Defendant shall provide EPA with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name, title, affiliation (e.g., company or firm), and the address of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information: and (6) the privilege asserted.  If a claim of privilege applies only to a portion of a document or record, the document or record shall be provided to EPA in redacted form to mask the privileged portion only.  Settling Defendant shall retain all documents, records, or information that it claims to be privileged until EPA has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged or confidential.

        c.        No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Subsite.

## XXVI.  RETENTION OF RECORDS

        94.     Until 10 years after Certification of Completion, Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the Work or to the liability of any person for Work or response actions or

response cots at or in connection with the Subsite.  The Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the Work and not contained in the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

95.     At the conclusion of this document retention period, Settling Defendant shall notify EPA at least 90 days prior to the destruction of any such records or documents, and, upon request by EPA, Settling Defendant shall deliver any such records or documents to EPA.  Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege, Settling Defendant shall provide to EPA with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted. If a claim of privilege applies only to a portion of a document or record, the document or record shall be provided to EPA in redacted form to mask the privileged portion only.  Settling Defendant shall retain all documents, records, or information that it claims to be privileged until EPA has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

## XXVII  NOTICES AND SUBMISSIONS

96.     Whenever, under the terms of this Consent Decree, written notice is required to be

given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and Settling Defendant.

As to the United States:  Chief, Environmental Enforcement Section

> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C.  20044-7611
> Re: DOJ # 90-11-2-09810

As to EPA:

> Cecilia Tapia, Director
> Superfund Division
> United States Environmental Protection Agency
> Region VII
> 901 N. 5th Street
> Kansas City, Kansas  66101

and

> Darrell Sommerhauser, Project Coordinator
> United States Environmental Protection Agency
> Region VII
> 901 N. 5th Street
> Kansas City, Kansas  66101

> United States Environmental Protection Agency
> 26W Martin Luther King Dr.
> MS-NWD Attn: Joe Poetter
> Cincinnati, OH 45268

As to Settling Defendant:

> Vern P. Powers, Mayor
> 220 N. Hastings Avenue
> Hastings, Nebraska 68901

and

> Michael E. Sullivan, Attorney
> 747 N. Burlington Avenue, Suite 305
> P.O. Box 309

Hastings, Nebraska 68901

As to State of Nebraska:                    Michael Felix
                                            Nebraska Department of Environmental Quality
                                            1200 N Street, Suite 400
                                            Atrium Building
                                            P.O. Box 98922
                                            Lincoln, Nebraska 68509

## XXVIII.  EFFECTIVE DATE

97.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court, except as otherwise provided herein.

## XXIX.  RETENTION OF JURISDICTION

98.     This Court retains jurisdiction over both the subject matter of this Consent Decree

and Settling Defendant for the duration of the performance of the terms and provisions of this

Consent Decree for the purpose of enabling any of the parties to apply to the Court at any time for

such further order, direction, and relief as may be necessary or appropriate for the construction or

modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to

resolve disputes in accordance with Section XX (Dispute Resolution) hereof.

## XXX.  INTEGRATION/APPENDICES

99.     This Consent Decree and its appendices constitute the final, complete and

exclusive agreement and understanding between the Parties with respect to the settlement

embodied in this Consent Decree.  The Parties acknowledge that there are no representations,

agreements, or understandings relating to this settlement other than those expressly contained in

this Consent Decree.  The following appendices are attached to and incorporated into this Consent

Decree:

"Appendix A" is the Access Agreement.

"Appendix B" is the Environmental Easement.

"Appendix C" is the Financial Information.

"Appendix D" is the Insurance Information.

"Appendix E" is the OU 12 ROD and the OU 20 ROD.

"Appendix F" is the map of the Site and the Subsite.

"Appendix G" is the Statement of Work or SOW.

"Appendix H" is the Performance Guarantee.

## XXXI.  MODIFICATION

100.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant.  All such modifications shall be made in writing.

101.    Except as provided in Paragraph 12 (Modification of the SOW), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedies within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedies within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendant.

102.    Nothing in this Decree shall be deemed to alter the Court's power to enforce,

supervise or approve modifications to this Consent Decree.

## XXXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

103.    This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA

42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or

withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

Settling Defendant consents to the entry of this Consent Decree without further notice.

104.    If for any reason the Court should decline to approve this Consent Decree in the

form presented, this agreement is voidable at the sole discretion of any Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties.

## XXIII.  SIGNATORIES/SERVICE

105.    The undersigned representative of Settling Defendant to this Consent Decree and

the Assistant Attorney General for the Environment and Natural Resources Division of the

Department of Justice certifies that he or she is fully authorized to enter into the terms and

conditions of this Consent Decree and to execute and legally bind such Party to this document.

106.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by

this Court or to challenge any provision of this Consent Decree unless the United States has

notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

107.    Settling Defendant shall identify, on the attached signature page, the name, address

and telephone number of an agent who is authorized to accept service of process by mail on

behalf of that party with respect to all matters arising under or relating to this Consent Decree.

Settling Defendant hereby agrees to accept service in that manner and to waive the formal service

requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendant need not file an Answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

XXXIV.   <u>CERTIFICATION OF COMPLETION</u>

108.    Upon completion of all phases of the Work as described in the SOW, or at such time as Settling Defendant determines that it has incurred a total of $1,700,000 in performing such Work, Settling Defendant shall submit to EPA for its approval a final statement of costs which, in conjunction with prior statements of costs as described in Paragraph 55 and approved by EPA, demonstrate the total amount Settling Defendant has incurred in performing the Work. Upon EPA's approval of the final statement of costs, which shall not be unreasonably withheld, EPA shall issue a written demand for costs, if any, in accordance with Paragraph 51.  If EPA determines that no additional costs are due in accordance with Paragraph 51, EPA shall notify the Settling Defendant that the final statement of costs has been approved and that no additional payments and/or Work are due.

109.    The Settling Defendant may serve upon the United States a Request for Certification of Completion, together with all necessary supporting documentation, certifying that the Settling Defendant has satisfied all of its obligations under the Decree including:

a.    Completion of all requirements under Section VI of this Decree (Performance of the Work By Settling Defendant), to the extent that the cost of the Work performed by the Settling Defendant in Paragraph 51 does not exceed $1,700,000 as approved by EPA;

b.    Compliance with all other requirements of this Consent Decree;

   c.  Payment in full of all costs required in Paragraphs 50 and 51 (including

accrued Interest), and any accrued stipulated penalties; and

   d.  Payment in full of the United States' 80% share of all Insurance Proceeds

received by Settling Defendant in accordance with Paragraph 52.

The Request for Certification of Completion shall contain the following statement, signed by a

responsible corporate official of a Settling Defendant or Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared
> under my direction or supervision in accordance with a system designed to assure
> that qualified personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the system, or those
> persons directly responsible for gathering the information, the information
> submitted is, to the best of my knowledge and belief, true, accurate, and complete.
> I am aware that there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing violations.

   110.  Following receipt of Settling Defendant's Request for Certification of Completion,

if the United States determines that the Settling Defendant has satisfied all of its obligations under

the Decree as set forth in Paragraph 109, the United States shall issue a Certification of

Completion, and the Parties shall submit, for the Court's approval, a joint stipulation terminating

the Consent Decree.  The United States' approval of the Certification of Completion shall not be

unreasonably withheld.

XXXV.  <u>FINAL JUDGMENT</u>

111.    This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

112.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

So ordered this __ 30th day of _Aug._, 2010.


                                                s/ Richard G. Kopf
                                                _____
                                                United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. the City of Hastings*, relating to the Hastings Ground Water Contamination Superfund Site, Second Street Subsite.

For the United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division



**7/1/2010**
Date

*Kathryn C. Macdonald*

KATHRYN C. MACDONALD
New York Registration No. 2597037
Senior Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: 202-353-7397
Facsimile: 202-514-4180
kathryn.macdonald@usdoj.gov

DEBORAH R. GILG
United States Attorney
District of Nebraska

/s/ Laurie Kelly
LAURIE KELLY MA Bar # 557575
Assistant United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Phone:  402-661-3700
Facsimile: 402-661-3081
laurie.kelly@usdoj.gov

United States v. City of Hastings (Second Street Subsite)                    Page 69 of 71

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. the City of Hastings*, relating to the Hastings Ground Water Contamination Superfund Site, Second Street Subsite.

6/23/10
Date

_____
Cecilia Tapia, Director
Superfund Division, Region VII
U.S. Environmental Protection Agency
901 N. 5th Street
Kansas City, Kansas  66101

6/29/10
Date

_____
Audrey B. Asher, Senior Counsel
U.S. Environmental Protection Agency
Region VII
901 N. 5th Street
Kansas City, Kansas  66101

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. the City of Hastings*, relating to the Hastings Ground Water Contamination Superfund Site, Second Street Subsite.


JUNE 28, 2010
Date

Vern P. Powers
City of Hastings
Mayor Vern P. Powers
220 Hastings Avenue
Hastings, Nebraska 68902